UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JUDITH U. HERRELL, HERRELL'S DEVELOPMENT CORPORATION, HERRELL'S<br>  Plaintiff<br><br>  V.<br><br>NOMOO LLC.<br>  Defendant | CIVIL ACTION NO. |

COMPLAINT
(And jury demand)

NATURE AND BASIS OF ACTION

1.     This is an action by Judith U. Herrell ("Ms. Herrell"), Herrell's Development

Corporation ("Herrell's Development") and Herrell's Ice Cream Corporation ("Herrell's Ice

Cream") (collectively "Plaintiffs") against NoMoo LLC ("LLC") for trademark infringement,

cancellation of trademark, and trademark dilution.  Development and Ice Cream, as trademark

licensees, seek injunctive relief and damages for trademark infringement under Sections 14 and

32 of the Trademark Act of 1946, as amended, 15 U.S.C. §§ 1114, 1116, and 1125(a)  ("the

Lanham Act"), and for infringement of a famous mark under Section 43(c) of the Lanham Act,

15 U.S.C. §1125(c).  Ms. Herrell seeks cancellation of a trademark under Sections 32 and 37,

15 U.S.C. §§ 1114, 1119.

PARTIES

1.     Plaintiff Judith U. Herrell is an individual with a business address at 8 Old

South Street, Northampton, Massachusetts 01067.

1

2.      Ms. Herrell is the owner by assignment of a registration on the Principal Register of the United States Patent & Trademark Office for the trademark *No-Moo* (No. 1540730)("No-Moo Mark").

3.      Plaintiff Herrell's Development is a corporation duly organized under the laws of the Commonwealth of Massachusetts.

2.      Plaintiff Herrell's Ice Cream is a corporation duly organized under the laws of the Commonwealth of Massachusetts.

3.      Defendant NoMoo, LLC ("LLC") is a limited liability company organized under the laws of the State of Delaware with a business address of 5118 Applebutter Road, Pipersville, Pennsylvania 18947 doing business as NoMoo Cookie Company.

4.      LLC is the owner of a registration on the Principal Register of the United States Patent & Trademark Office for the trademark NoMoo (Registration No. 4,692,455). ("NoMoo Mark").

## JURISDICTION AND VENUE

5.      This Court has original subject matter jurisdiction of this matter pursuant to 15 U.S.C. § 1119 and 28 U.S.C. §1331, as this case arises under the Lanham Act, 15 U.S.C. §§ 1064, 1114, 1121, and 1125(a) and (c), Venue is proper in this Court under 28 U.S.C. §1391(c), as NoMoo is a limited liability corporation subject to personal jurisdiction in this judicial district.  Venue in the Western Division of this Court is proper pursuant to Local Rule 40.1(D)(1)(c).

FACTUAL ALLEGATIONS

Herrell's Corporate and Trademark History

1.      In 1980, Ms. Herrell's predecessor-in-interest, Stephen Herrell ("Mr. Herrell"), d/b/a Herrell's Ice Cream opened an ice cream parlor in Northampton, Massachusetts. ("Northampton store").

2.      On May 23, 1989, the United States Patent and Trademark Office ("USPTO") issued to Mr. Herrell a registration for the word mark "No-Moo" in connection with non-dairy frozen confections for consumption on and off the premises in International Trademark Class 30, with a stated date of first use of April 29, 1985, and a stated date of first use in commerce of November 28, 1986.

3.      From November 1986 until August 19, 2011, Mr. Herrell engaged in substantially exclusive and continuous use of the No-Moo Mark in interstate commerce in connection with non-dairy frozen confections for consumption on an off the premises, in part through two corporations, Herrell's Ice Cream (of which he was sole stockholder, and which owns and operates the Northampton store), and Herrell's Ice Cream, Inc. (a wholly-owned subsidiary of Herrell's Ice Cream Corp., which was later consolidated with Herrell's Ice Cream Corp.), and in part through franchisees and licensees under franchise and license agreements with Herrell's Ice Cream Corp, and later with Herrell's Development Corp.

4.      On August 19, 2011, Mr. Herrell assigned a one-half interest in the No-Moo Mark to Ms. Herrell.

5.      Simultaneous with the assignment, Mr. Herrell and Ms. Herrell entered into written license agreements with Herrell's Ice Cream and Herrell's Development

6.      On or about February 6, 2014, Mr. Herrell conveyed to Ms. Herrell all of his ownership interests in Herrell's Ice Cream and Herrell's Development.

7.      Simultaneous with such transaction, Mr. Herrell assigned to Ms. Herrell his one-half interest in the No-Moo Mark, so that, after the assignment, Ms. Herrell became the sole owner of the No-Moo Mark.

8.      As sole owner of the No-Moo Mark, Ms. Herrell then entered into license agreements with both Herrell's Ice Cream and Herrell's Development.

9.      Herrell's Ice Cream has engaged in substantially exclusive and continuous use of the No-Moo Mark in interstate commerce in connection with non-dairy frozen confections since 1986.

10.     In or about 1993, Herrell's Ice Cream began selling non-dairy baked goods under the No-Moo Mark for consumption on and off the premises at its Northampton, Massachusetts.

11.     The No-Moo Mark had been in continuous and substantially exclusive use in connection with non-dairy baked goods by Ms. Herrell, through her authorized licensees, Herrell's Ice Cream and Herrell's Development, and their licensees and franchisees, since 1993.

12.     On July 31, 2015, Ms. Herrell applied to the USPTO for registration of the No-Moo Mark on the Principal Register for non-dairy baked goods for consumption on or off the premises. (Serial No. 86710786)

13.     Herrell's Ice Cream currently advertises, offers for sale and sells at the Northampton store, and authorizes others to sell under license, a variety of products under the No-Moo Mark ("No-Moo® products"), including:

     a.  No-Moo® non-dairy frozen desserts;
     b.  No-Moo® Cookie & Frozen Dessert Sandwiches;
     c.  No-Moo® non-dairy frozen dessert cakes with No-Moo® cake center;
     d.  No-Moo® cookies (Chocolate Chip, Potato Chip, Chocolate Flourless Walnut, and Oatmeal);
     e.  No-Moo® Eggless Chocolate Cupcakes;
     f.  No-Moo® Vanilla Cake;
     g.  No-Moo® Brownies;
     h.  No-Moo® Cookie Dough Pie; and
     i.  No-Moo® Brookie Pie.

14.     In addition, Herrell's Ice Cream advertises and sells No-Moo® Ice Cream by mail on its website at http://www.herrells.com/cakes-parties/ice-cream-by-mail, and advertises and sells No-Moo® non-dairy baked goods (those which do not require refrigeration) on its website at http://www.herrells.com/cakes-parties/pies-and-baked-goods.

15.     Herrell's Development advertises, offers for sale, and sells No-Moo® products through its authorized franchisee, Herrell's Ice Cream Huntington, 46L Gerard Street, Huntington, New York, and through its authorized retailers, Lickety Split, 69 Spring Street, Williamstown, Massachusetts 01267; Richardson's Candy Kitchen, Route 5 & 10, Deerfield, Massachusetts 01342; and Glazed Donuts, 19 N. Pleasant Street, Amherst.

16.     Throughout their 30-plus year history, Herrell's Ice Cream and Herrell's Development and predecessor corporations have actively conducted advertising and promotional activities designed to enhance and promote the public image of Herrell's Ice Cream, the  No-Moo Mark and No-Moo products through a variety of means, including but not limited to point-of-sale displays, and newspaper and radio advertising, booths at industry trade

shows, via posters and ads for educational and sporting events, local sports teams, local theater companies and venues, and charities.

17.     The non-dairy frozen confections sold by Herrell's Ice Cream, and by Herrell's Development's licensees under the No-Moo Mark, have been the subject of numerous unsolicited reviews on the Internet over the years.

18.     As a result of the thirty-years of sales to hundreds of thousands of customers at the Northampton store, sales of No-Moo products at the locations of authorized licensees and franchisees, frequent mention of Herrell's No-Moo ice cream on the Internet, and visits by consumers to Herrell's website, consumers have come to associate non-dairy frozen confections and non-dairy baked goods sold under the No-Moo Mark exclusively with Herrell's Ice Cream as their source.

Wrongdoing by Defendants

19.     On September 3, 2010, Mr. David Bader ("Mr. Bader") filed an application with the USPTO for registration of the mark "NoMoo" connection with kosher baked goods in International Trademark Class 30.  The application was filed on an intent-to-use basis under Section 1(b) of the Lanham Act.

20.     Among the kosher baked goods Mr. Bader intended to sell under the No-Moo Mark were dairy-free, sweetened dessert products.

21.     The non-dairy frozen confections sold by Herrell's Ice Cream, Herrell's Development, and its licensees and franchisees are dairy-free, sweetened dessert products.

22.     The non-dairy baked goods sold by Herrell's Ice Cream, and Herrell's Development's New York franchisee are dairy-free, sweetened dessert products.

23.     In filing the 2010 application, Mr. Bader certified that, to the best of his
knowledge and belief, no other person had the right to use the NoMoo mark in commerce,
either in an identical form or in such near resemblance as to be likely, when used on or in
connection with the goods of such other person, to cause confusion, or to cause mistake, or to
deceive.

24.     At the time he filed the application with the USPTO, Mr. Bader was on
constructive notice of the existence of Mr. Herrell's registration on the Principal Register of the
USPTO of the No-Moo Mark in Class 30 for non-dairy frozen confections.

25.     The No-Moo Mark so nearly resembled the NoMoo Mark as to be likely, when
used by Mr. Herrell's licensees and sub-licensees in connection with non-dairy desserts, to
cause confusion, or to cause mistake, or to deceive.

26.     Mr. Bader filed, or caused his attorney to file, a Statement of Use in connection
with the 2010 application falsely representing August 1, 2011 as the date of first use of the
NoMoo Mark in commerce in connection with kosher bakery products.

27.     After the Examining Attorney at the USPTO rejected the Statement of Use
because the specimen submitted did not show use of the NoMoo mark in connection with the
sale of kosher baked goods in commerce, Mr. Bader abandoned the 2010 trademark
application.

28.     On July 24, 2014, Mr. Bader, now doing business as NoMoo LLC, filed a
second application in the USPTO for registration on the Principal Register of the NoMoo Mark
in connection with kosher bakery products in International Class 30, giving as a first date of
use of June 1, 2014.

29.      In filing the 2014 application, NoMoo LLC certified that, to the best of its knowledge and belief, no other person had the right to use the NoMoo mark in commerce, either in an identical form or in such near resemblance as to be likely, when used on or in connection with the goods of such other person, to cause confusion, or to cause mistake, or to deceive.

30.      At the time NoMoo LLC filed the 2014 application with the USPTO, it was on constructive notice of the existence of Ms. Herrell's registration on the Principal Register of the USPTO of the No-Moo Mark in Class 30 for non-dairy frozen confections.

31.      The No-Moo Mark so nearly resembled the NoMoo Mark as to be likely, when used by Ms. Herrell's licensees and sub-licensees in connection with non-dairy desserts, to cause confusion, or to cause mistake or to deceive.

32.      On February 24, 2015, the USPTO issued to NoMoo LLC a registration for the word mark "NoMoo" in connection with kosher bakery products in International Trademark Class 30.

33.      NoMoo LLC offers diary-free cookies for sale to customers via an Internet website (www.nomoocookies.com) and through 27 authorized retailers: fifteen (15) in Pennsylvania, two (2) in New York, five (5) in Connecticut, and three (2) in New Jersey, and two (2) in Massachusetts.  One store (Torrington, CT) is 60 miles from the Northampton store; another, in Cambridge, New York, is 90 miles from the Northampton store.

34.      The number of stores carrying NoMoo cookies has increased from ten to twenty stores in March 2016, and located only in the states of Pennsylvania and Connecticut, to twenty-seven stores today in five Northeastern states.

35.     The first page of the results list for a Google™ search using the search term No Moo includes links to the website for NoMoo Cookies (first and second listings in search results), and a link to the Herrell's website (fourth listing).

36.     The first page of the results list for a Google™ search using the search term No-Moo includes links to the website for NoMoo Cookies (first and second listings in search results) and a link to the Herrell's website  (fourth listing).

37.     LLC competes directly with Herrell's Ice Cream in the sale of non-dairy/dairy free confections, including ice cream and baked goods, both on the Internet and through authorized retailers.

38.     On August 18, 2015, shortly after becoming aware that LLC had obtained a federal registration for the NoMoo Mark and, doing business as NoMoo Cookie Company, was offering non-dairy/dairy-free cookies under the NoMoo Mark on its website and through retail locations, Ms. Herrell petitioned the Trademark Trial and Appeal Board of the USPTO to cancel Registration No. 4,692,455 on the ground that LLC's continued use of the NoMoo Mark creates a likelihood of confusion with her previously registered No-Moo Mark.

39.     LLC has not only opposed cancellation, but has continued to advertise, promote, and sell its dairy-free/non-dairy cookies under the NoMoo Mark on its website and through an ever-expanding number of retail locations in the Northeast.

40.     LLC has continued its use of the domain name "NoMoo Cookies" for Internet and website purposes.

41.     LLC's use of the name "NoMoo" in the advertising, promotion, and sale of non-dairy/dairy-free cookies has caused and will likely continue to cause actual confusion among consumers.

## COUNT I

### (§§ 32, 37 OF THE LANHAM ACT)

42.     Ms. Herrell incorporates and realleges, as if fully set forth in this paragraph, the allegations of the foregoing paragraphs.

43.     LLC has, without Ms. Herrell's consent, used in commerce a colorable imitation of the No-Moo Mark in connection with the sale, offering for sale, distribution, and/or advertising of goods or services likely to cause confusion, or to cause mistake, or to deceive in violation of Section 32(1)(a) of the Lanham Act, 15 U.S.C. §1114(1)(a).

44.     The infringing acts committed by LLC have been committed with knowledge that such imitation was intended to cause confusion, or to cause mistake or to deceive, and have caused, and, unless LLC's registration for the NoMoo Mark is cancelled, will continue to cause damage to Ms. Herrell.

## COUNT II

### (§43(a) OF THE LANHAM ACT)

45.     Plaintiffs incorporate and realleges, as if fully set forth in this paragraph, the allegations of the foregoing paragraphs.

46.     The No-Moo Mark, as more fully described above, is a well established mark that serve to identify the goods and services sponsored, approved by, authorized by, associated with, or affiliated exclusively with Herrell's Ice Cream.

47.     As evidenced by the federal registrations and long, continued and exclusive use, the No-Moo mark has acquired distinctiveness and secondary meaning in connection with non-dairy frozen confections and non-dairy baked goods for consumption on and off the premises provided by Ms. Herrell and her wholly-owned corporations and their licensees and franchisees.

48.     Prior to beginning the sale of dairy-free cookies under the NoMoo Mark, LLC had actual and constructive knowledge of the use and ownership by the Plaintiffs of the No-Moo Mark and was aware of the advertising and promotional activities sponsored by the Plaintiffs.

49.     LLC, in connection with products almost identical to those offered by Plaintiffs, and their licensees and franchisees, has used and continue to use, and has expanded, its use of a colorable imitation of the No-Moo Mark in a manner which is likely to cause confusion, or cause mistake, or to deceive as to the affiliation, connection, or association of LLC with the Plaintiffs, and to the origin, sponsorship, or approval of LLC's goods by the Plaintiffs.

50.     LLC's use of a colorable imitation of the No-Moo Mark constitutes false designations of origin, false descriptions and false representations in interstate commerce in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and have caused and will continue to cause irreparable harm to Herrell's Ice Cream and Herrell's Development unless and until temporarily, preliminarily, and thereafter permanently enjoined by this Court. Herrell's Ice Cream and Herrell's Development have no adequate remedy at law.

51.     LLC's conduct represents a conscious and intentional effort to misappropriate the No-Moo Mark for the purposes of injuring Herrell's Ice Cream and Herrell's Development, and unjustly enriching LLC at their expense.

## COUNT III

### (SECTION 43(c) OF THE LANHAM ACT)

52.     Plaintiffs incorporate and reallege, as if fully set forth in this paragraph, the allegations of the foregoing paragraphs.

53.     The No-Moo Mark is "famous" within the meaning of Section 43(c)(1) and (2) of the Lanham Act.

54.     After the No-Moo Mark became famous, and after October 6, 2006, LLC commenced use of a mark in commerce that is likely to cause dilution by blurring by impairing the distinctiveness of such famous mark, lessening the capacity of such mark to identify and distinguish non-dairy dessert products offered by Ms. Herrell and her affiliates, licensees, and franchisees, and by creating an association arising from the similarity between LLC's NoMoo Mark and the Plaintiffs' No-Moo Mark that harms the reputation of such famous mark.

55.     LLC willfully intended to trade on the recognition of the No-Moo mark and cause dilution of such famous mark.

## COUNT IV

### (DECLARATORY RELIEF UNDER 28 U.S.C. §2201)

56.     Plaintiffs incorporate and reallege, as if fully set forth in this paragraph, the allegations of the foregoing paragraphs.

57.     Plaintiffs maintain that the use by LLC of the mark "NoMoo" violates Sections 43(a) and (c) of the Lanham Act.

58.     LLC denies that its use of the "NoMoo" violates the Lanham Act and asserts a continued right to use such name in the sale of kosher baked goods, including dairy-free cookies.

59.     An actual case or controversy exists with respect to the rights of Plaintiffs and LLC, and whether the use by LLC of the mark "NoMoo" violates Plaintiffs' rights under federal law.

<u>PRAYERS FOR RELIEF</u>

**WHEREFORE,** Plaintiffs respectfully requests that this Court:

A.     Order the cancelation on the Principal Register of the United States Patent & Trademark Office of the trademark "NoMoo" (Registration No. 4,692,455) in International Trademark Class 30 for kosher bakery products, and certify the cancelation to the Director for appropriate entry upon the records of the Patent and Trademark Office, under Sections 32 and 37, 15 U.S.C. §§ 1114, 1119.

B.     Enter judgment that Defendant has, without the consent of Plaintiffs, used in commerce a colorable imitation of the No-Moo mark in connection with the sale, offering for sale, distribution, and advertising of non-dairy/dairy-free baked dessert products which such use is likely to cause confusion, or to cause mistake, or to deceive in violation of 15 U.S.C. §1114(1)(a).

C.     Enter judgment that Defendant has used false designations of origin, false descriptions, and false representations, in bad faith and in willful violation of 15 U.S.C. §

1125(a); has injured the business reputation of the Plaintiffs and diluted the distinctive quality of Ms. Herrell's federally registered and famous mark; and has otherwise injured Plaintiffs by promoting, advertising, and selling dairy-free cookies using a colorable imitation of the No-Moo Mark in willful violation of 15 U.S.C.  § 1125(c)(1).

D.      Enter judgment declaring that Defendant NoMoo LLC's use of the NoMoo Mark violates Plaintiffs' rights under the Sections 43(a) and (c) of the Lanham Act, 15 U.S.C. §§ 1125(a), (c).

E.      Issue a preliminary injunction and thereafter a permanent injunction under 15 U.S.C. §1116(a) ordering Defendant NoMoo LLC and its respective officers, agents, servants, employees, and attorneys, and those persons in active concert with them, to refrain from using, authorizing or employing the name or mark "No-Moo" or any colorable imitation of the No-Moo Mark, including without limitation the use of the mark "NoMoo", as will be requested in a separate motion, and to file with the court and serve on the Plaintiffs within thirty (30) days of service on Defendant NoMoo LLC of such injunction a report in writing under oath setting forth in detail the manner and form in which Defendant has complied with the injunction;

F.      Award damages to the Plaintiffs as provided under 15 U.S.C. §1117(a), including the Defendants' profits, three times the actual damages sustained by Plaintiffs, and reasonable attorneys fees to the Plaintiffs as prevailing party, and/or if the court shall find that the amount of recovery based on profits is either inadequate or excessive, to award in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of this case, and the costs of this action;

G.      Issue an order under 15 U.S.C. §1118 ordering that all labels, signs, prints,

packages, wrappers, receptacles, and advertisements in the possession of Defendants bearing

the registered marks or colorable imitation of such marks, shall be delivered and destroyed;

H.      Require the Defendant to pay Plaintiffs both the costs of this action and

reasonable attorney's fees; and

I.              Grant such other and further relief as this Court deems appropriate.

PLAINTIFFS DEMAND A JURY TRIAL ON ALL ISSUES
THAT ARE TRIABLE BY JURY AS A MATTER OF RIGHT

Respectfully submitted,

Judith U. Herrell, Herrell's Ice
Cream Corp., and Herrell's
Development Corp.

Plaintiffs

 /Lindsey M. Straus/
Lindsey M. Straus, Esquire
BBO #554181
Cummings Franchise Law, PC
Two Main Street
Suite 300
Stoneham, MA 02180
(781) 307-5680
lstraus@cummingsfranchiselaw.com

Dated: July 22, 2016